# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 24-3107

September Term, 2025

FILED ON: JULY 17, 2026

UNITED STATES OF AMERICA,
          APPELLEE

v.

VINCENT FORREST,
          APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00431)

Before: SRINIVASAN, *Chief Judge*, and RAO and PAN, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED.**

I.

Vincent Forrest was a D.C. Metropolitan Police Department (MPD) officer who, beginning in 2019, started working with Raquel DePaula. DePaula was a "runner"—someone who solicited individuals involved in car accidents and referred them to personal-injury attorneys in exchange for compensation. Before 2006, DePaula obtained accident victims' contact information by visiting police stations in person. But that year, the District enacted a law requiring runners to wait 21 days after an accident before contacting a victim. After that change, DePaula began obtaining the information directly from police officers under the table. Before working with Forrest, DePaula had an arrangement with Officer Walter Lee, whom she paid weekly cash sums in exchange for the names and phone numbers of accident victims. When Lee stopped communicating with her, a friend connected her with Forrest.

Forrest and DePaula agreed that he would send approximately 25 names per day in exchange for $1,200 to $1,800 per week in cash. Their communications occurred almost exclusively through encrypted WhatsApp messages, and DePaula paid in cash and kept no ledger because "[t]here's no trace." J.A. 404. In one exchange, Forrest warned there would be a delay because "[t]he watch commander [was] walking around talking to us so I ain't trying to be hot with it." J.A. 218, 424. That same day, Forrest explained that a commander had asked why he was at the station on his day off, and that he replied he "had to catch up on some other paperwork lol," after which he sent DePaula more names and numbers. J.A. 218, 425. At times, DePaula sent unencrypted messages, to which Forrest responded using primarily encrypted messages.

In 2019, the MPD conducted an audit after receiving complaints that accident victims were being solicited by runners before the 21-day waiting period had expired. The audit revealed that, between April 14 and August 17, 2019, Forrest had viewed 4,383 crash reports—including 1,691 on his days off around that time—compared to only 51 reports in the preceding two years. It also showed that when Forrest accessed a report, he navigated directly to the section containing victim contact information. FBI agents and MPD Internal Affairs personnel subsequently interviewed Forrest. In that interview, Forrest acknowledged that he understood it was illegal to provide crash information to third parties but twice denied doing so, even though agents warned him that lying to the FBI was a federal offense. At no point during the interview did Forrest mention DePaula. Agents then informed Forrest they had obtained a search warrant for his phone. When he declined to provide the password, agents accessed the device using forensic technology and recovered encrypted WhatsApp communications between Forrest and DePaula.

A grand jury charged Forrest with conspiracy, 18 U.S.C. § 371; bribery, 18 U.S.C. § 201(b)(2)(C); and making a false statement, 18 U.S.C. § 1001. Following a jury trial, Forrest was convicted on all counts. The district court sentenced him to twenty months of imprisonment and three years of supervised release.

## II.

Forrest challenges the sufficiency of the evidence for all of his convictions. Our review of a sufficiency-of-the-evidence challenge is "highly deferential" to the jury's verdict. *United States v. Reynoso*, 38 F.4th 1083, 1089 (D.C. Cir. 2022). The question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Boyd*, 803 F.3d 690, 692 (D.C. Cir. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The evidence here readily satisfies that standard on all counts of conviction.

Turning first to Forrest's bribery conviction, the federal bribery statute prohibits a public official from "corruptly" receiving "anything of value" "in return for . . . being induced to do or omit to do any act in violation of the official duty of such official." 18 U.S.C. § 201(b)(2)(C). Forrest does not contest that he received something of value or that he was a public official; he

challenges only whether the government proved he acted corruptly. That element requires showing that "the official ha[s] a corrupt state of mind and accept[s] (or agree[s] to accept) the payment intending to be influenced in the official act." *United States v. Paitsel*, 147 F.4th 1010, 1017 (D.C. Cir. 2025) (quoting *Snyder v. United States*, 603 U.S. 1, 11 (2024)). A rational jury could find that Forrest acted with corrupt intent.

Forrest admitted to the FBI that he understood sharing crash information with third parties was illegal, yet when agents asked—repeatedly and in broad terms—whether he had ever done so, he denied it. A rational jury could view that blanket denial not as the product of confusion or mistake, but as evidence of consciousness of wrongdoing. His conduct in the scheme reinforced his corrupt state of mind. He communicated with DePaula almost exclusively through an encrypted messaging application; when his watch commander was nearby, he delayed transmissions because he "ain't trying to be hot with it," J.A. 218, 424; when a supervisor asked why he was at the station on his day off, he fabricated an explanation (claiming he had to catch up on paperwork) rather than disclose that he was sending victims' names to DePaula; and following his FBI interview, he ceased all contact with DePaula. The scale and timing of his activity point in the same direction. Over roughly four months—beginning the very day he started providing names to DePaula—Forrest accessed 4,383 crash reports, compared to 51 in the preceding two years, including 1,691 on his days off. Nothing in his duties required that volume of access, and he offers no alternative explanation for it.

A rational jury likewise could have found Forrest guilty of conspiracy. To convict Forrest of conspiracy under 18 U.S.C. § 371, the government had to establish an agreement with at least one other person to commit bribery, his knowing participation in the agreement, and at least one overt act in furtherance of it. *See United States v. Smith*, 950 F.3d 893, 895 (D.C. Cir. 2020). Forrest raises no independent challenge to his conspiracy conviction, contending only that because he lacked the requisite intent for bribery, his conspiracy conviction must fall as well. That argument fails for the reasons already stated. And the evidence plainly supported the remaining elements: Forrest and DePaula reached an explicit agreement to exchange accident-victim information for cash, Forrest's crash-report access surged from two reports to 656 in the month immediately following the agreement, and his repeated transmissions of victim-contact information to DePaula in exchange for weekly cash payments are overt acts in furtherance of the conspiracy.

Last, the evidence was sufficient to find Forrest guilty of making a false statement. To sustain a conviction under 18 U.S.C. § 1001(a)(2), the government had to prove that Forrest "(1) knowingly and willfully (2) [made] a[] materially false, fictitious, or fraudulent statement or representation (3) in a matter within the jurisdiction of the executive . . . branch." *United States v. Moore*, 612 F.3d 698, 700 (D.C. Cir. 2010) (internal quotation marks omitted). A statement is made "knowingly" when the defendant "know[s] the falsity of his statement at the time it was made" and it was not "the product of an accident, honest inadvertence, or duress." *Bryson v. United States*, 396 U.S. 64, 69–70 (1969). Forrest challenges only the element of knowing falsity,

contending that when he denied providing crash information to third parties, he believed the agents were asking only about certain confidential records rather than the names and phone numbers he sent to DePaula. The evidence more than sufficed to support the jury's contrary conclusion.

The agents' questions were not limited in any sort of way that would support the narrow understanding Forrest posits. After Forrest denied ever providing crash information to a third party, an agent followed up: "No? You never provided any kind of traffic report information, contact information, anything like that?," to which Forrest again replied "[n]o," offering no qualification or request for clarification. J.A. 245. If Forrest believed the inquiry concerned only confidential records, the natural response would have been to say so—or to mention DePaula and explain why his conduct was permissible. Instead, he gave an unqualified denial and never mentioned DePaula at any point during the interview. A rational jury could conclude that Forrest understood the scope of the question and knowingly denied his conduct falling squarely within it. The surrounding circumstances support what that silence suggests. Forrest's own acknowledgment during the interview that providing crash information to third parties was illegal undercuts his confusion defense: a defendant who admits awareness that certain conduct is unlawful would not appear to a jury to be uncertain about what is being asked when agents ask whether he engaged in that very conduct. The agents had also advised Forrest that making false statements to federal investigators is itself a federal offense, and he confirmed that he understood that crime. On this record, a rational jury could conclude that Forrest knew precisely what he was denying and that his denial was false.

\* \* \* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

FOR THE COURT:
Clifton B. Cislak, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk